UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jose Cuellar,                                                    Civil No. 10-2041 (SRN/FLN)

          Petitioner,

v.                                                              **REPORT AND RECOMMENDATION**

Scott P. Fisher, Warden,

          Respondent.

_____

Petitioner, *Pro Se*.
Ana H. Voss, Assistant United States Attorney, for Respondent.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1). Respondent filed a response in opposition to Petitioner's petition (ECF No. 3), and Petitioner filed a reply brief (ECF No 8.)  The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons which follow, this Court recommends that the petition be **DENIED**.

## I.  BACKGROUND

Petitioner Jose Cuellar ("Petitioner") is currently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"), however, the events underlying this Petition occurred at the United States Penitentiary in Pollock, Louisiana. Petitioner is serving a 70-month sentence, followed by three years of supervised release, for his conviction of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). (ECF No. 4, Buege Decl. ¶ 3, Attach. A.)  Petitioner has a projected release date of April 15, 2011, via Good Conduct Time ("GCT") release. *Id.*

Petitioner brings this § 2241 habeas corpus petition claiming that a habeas writ should issue to relieve him from a disciplinary sanction of the loss of 40 days of good conduct time and the loss of telephone privileges. Petitioner also seeks restoration of his eligibility for the Residential Drug Abuse Program ("RDAP") 12-month sentence reduction and restoration of his minimum security custody classification.[1]

On June 27, 2010, staff wrote an incident report charging Petitioner with Possession of a Hazardous Tool, a violation of Code 108 of Bureau of Prisons ("BOP") policy, and Possession of Anything Not Authorized, a violation of Code 305 of BOP policy. (Buege Decl. Attach. B.) Officer Anders reported:

> While conducting a random search of the camp, inmate Jose Cuellar . . . was in the T.V. room. After being brought into the Laundry room for a strip search he was sent to stand by his bunk. When I (D. Anders) was searching the T.V. Room, the chair inmate Cuellar was sitting in had a pillow with a cellular phone and charger hidden inside the pillow case. After discovering this I (D. Anders) searched his Locker were I found many other unauthorized items including, i.e. [soldering] tools, Mp3 players, multiple headphones, [soldering] wire, mini screwdriver, and cellular phone hands free headsets.

(Buege Decl. Attach. B.) Petitioner was provided with a copy of the incident report at 6:43 a.m. on June 27, 2009. The investigating lieutenant read him his rights and Petitioner stated that he understood them. When asked if he wished to make a statement, Petitioner stated "no comment." (Buege Decl. Attach B.)

The incident report was referred to the Unit Discipline Committee ("UDC"), which held a hearing on June 30, 2009. (Buege Decl. ¶ 6-7.) Petitioner was advised of his rights and stated

---

[1] Through a petition for habeas corpus, a prisoner may only challenge the "validity of his conviction or the length of his detention." *Kruger v. Erickson*, 77 F.3d 1071 (8th Cir. 1996). Because Petitioner's requested relief regarding his telephone privileges and custody classification would affect the condition, rather than the duration of his confinement, they are not proper forms of relief pursuant to a petition for habeas corpus.

2

that he understood his rights. (Buege Decl. ¶ 7.) Petitioner stated that it was not his cell phone and that the chair in which the cell phone was found was not his chair. The UDC recommended loss of Good Conduct Time and telephone privileges and referred the charge to the DHO for further hearing. (Buege Decl. ¶ 7.) Prior to the DHO hearing, Petitioner was provided with three documents titled: "Inmate Rights at Discipline Hearing," "Notice of Discipline Hearing Before DHO" and "Notice of Advisement of DHO Hearing." (Buege Decl. Attach. C.) Petitioner signed the "Inmate Rights at Discipline Hearing" form, and indicated on the "Notice of Discipline Hearing Before DHO" form that he waived his right to a staff representative and did not wish to have witnesses. *Id.*

The DHO hearing was conducted on July 8, 2009. The DHO Report indicates that Petitioner was advised of his due process rights and asked to make a statement. (Buege Decl. Attach. D.) Petitioner stated that he understood his rights, had received a copy of the incident report, and did not request a staff representative or any witnesses. *Id.* Petitioner then stated, "All the stuff they found in my locker was mine to fix radios; that wasn't my chair; they are just saying that because of the other stuff they found." *Id.* The DHO relied on the account of the reporting staff member and Petitioner's admission to possessing some of the prohibited items in finding that Petitioner had committed the prohibited act of Possessing Hazardous Tool, Code 108 and Possession of Anything Not Authorized, Code 305. *Id.* The DHO stated that Petitioner's claim that the cell phone was not his was diminished due to the fact that Petitioner "did have physical control over it, as well as having a headset and means to conceal the cell phone and charger." *Id.* The DHO advised Petitioner of his right to appeal through the Administrative Remedy procedure. *Id.* The report was signed on July 9, 2009, and a copy was delivered to Petitioner. *Id.*

Petitioner appealed the decision of the DHO through the Administrative Remedy Program and his appeal was denied. (Buege Decl. ¶ 14.) Petitioner has exhausted his administrative remedies. Petitioner filed this Petition on May 13, 2010. (ECF No. 1.)

Petitioner alleges that the disciplinary hearing officer's ("DHO's") finding of guilt, as reflected in paragraph 11 of the DHO report, does not describe which prohibited act he committed. (ECF No. 1, Pet. for Writ of Habeas Corpus ¶ 13 [hereinafter "Pet."].) He also argues that the DHO's finding as to the disciplinary charge of Possession of a Hazardous Tool is in error for two reasons. First, there were other inmates present in the T.V. room on the night on which the cell phone was found, making it impossible to conclude that Petitioner possessed the cell phone. (Pet. ¶ 14.) Second, the fact that Petitioner admitted to possessing the contraband of soldering wire, mini screwdriver and telephone hands free headsets does not support a finding that Petitioner possessed the cell phone. (Pet. ¶ 15.) Finally, in his reply brief Petitioner argues that his right to Due Process was violated because he was not given "fair warning" that "he would be responsible for any contraband located in every area where he was sitting, standing, etc." prior to being sanctioned. (ECF No. 8, Pet'r's Reply to the Govt.'s Resp. To Pet. For Writ of Habeas Corpus [hereinafter Pet'r's Reply].)

## II. DISCUSSION

**A.   Petitioner's Constitutional Rights Were Not Violated During the Disciplinary Proceedings**

To obtain habeas relief under 28 U.S.C. section 2241, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). Here, Petitioner alleges that his

right to due process was violated because the disciplinary sanction was based on insufficient evidence. Further, Petitioner alleges that he was not given fair warning of the prohibited conduct before he was sanctioned and that the DHO did not describe which prohibited act he committed in the DHO report. (Pet. ¶ 13-15; Pet'r's Reply.) The Court finds that the record does not support Petitioner's contention that he was disciplined in violation of his constitutional rights.

### 1. There Was Sufficient Evidence to Support the Findings of the DHO

Petitioner claims that there was insufficient evidence to find that he engaged in the prohibited act of Possession of a Hazardous Tool. Petitioner argues that because there were other inmates in the T.V. room the night a cell phone was found in that room, neither the reporting staff nor the DHO can conclude that Petitioner possessed the cell phone. Further, he argues that his admission to possession of the contraband of soldering wire, mini screwdriver, and telephone hands free headsets does not support the finding that he possessed a cell phone. He argues that if that were the case, he "will always be guilty of possessing any cellular telephone in whatever camp or correctional institution, if he possesses and repairs cellular hands free headsets even if he [is] repairing it for a staff member." (Pet. ¶ 15.) To satisfy the requirements of due process, however, the record must only include some evidence that supports the disciplinary decision. *See Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1985).

In *Hill*, the Supreme Court stressed that the decision of a prison disciplinary officer after a disciplinary hearing was entitled to considerable deference. *See id.* at 454 (the findings of a prison disciplinary authority should not be second-guessed by the federal courts as long as they "are supported by some evidence in the record"). Ascertaining whether this standard is satisfied

does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. *Id.* at 455-56. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *Id.*; *see also Goff v. Burton*, 7 F.3d 734, 739 (8th Cir.1993). A prison guard's testimony or incident report is sufficient to provide some evidence. *Id.* at 456. Courts are not part of the appellate process for prison discipline proceedings. *Courtney v. Bishop*, 409 F.2d 1185, 1187 (8th Cir.1969); see also, *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir.1996) (if there is some evidence to support a disciplinary committee's decision, the requirements of procedural due process have been met; the decision can be upheld even if the evidence supporting the decision is "meager").

Here, the Court finds that the minimal "some evidence" standard is met. The DHO's determination that Petitioner had committed the prohibited act of Possession of Anything Not Authorized, was supported by Petitioner's own admission, "All the stuff they found in my locker was mine to fix radios." (Buege Decl. Attach. D.) According to the incident report, the items found in his locker included soldering tools, multiple headphones, soldering wire, mini screwdriver and cellular phone hands free headsets. (Buege Decl. Attach. B.) Under BOP policy, inmates cannot possess soldering tools, mini screwdrivers, more than one headset, soldering wire, or cellular phone hand free headsets. (Buege Decl. ¶ 4 n. 2.)

With regard to the charge of Possession of a Hazardous Tool, which in Petitioner's case was a cellular telephone, the DHO considered the statement of the reporting staff member contained in the incident report that he found a cell phone and cell phone charger inside a pillow on the chair on which Petitioner had been sitting. (Buege Decl. Attach. D.) The DHO weighed

Petitioner's statement that the cell phone was not his against the fact that the Petitioner "had physical control over it" because it was found in the chair in which Petitioner had been sitting and the fact that Petitioner admitted to possessing a cellular hands free headset. The DHO found based on the evidence that Petitioner had possession of the cell phone.

Petitioner argues that because the cell phone was found in a common area, with other inmates present, the evidence does not support the DHO's conclusion that the cell phone belonged to him. In several other cases involving contraband found in a common area, courts have upheld the decision of the DHO, so long as there is "some evidence" that the contraband belongs to the sanctioned inmate. *See Scott v. Fondren*, No. 09-762, 2009 WL 3855926, at *2 (D. Minn. Nov. 17, 2009); *Ebeck v. Anderson*, No. 09-3123-CV-S-GAF, 2009 WL 3062015, at *2 (W.D. Mo. Sept. 18, 2009). This Court finds the reporting officer's statement regarding the location of the cell phone in Petitioner's chair, combined with Petitioner's admission to owning a cell phone hands free headset, an accessory utilized in conjunction with a cell phone, sufficient to constitute "some evidence" that the cell phone belonged to Petitioner.

### 2. The Disciplinary Hearing Comported With the Procedural Requirements Set Forth in *Wolff*

Petitioner claims he was subjected to disciplinary sanctions in violation of his due process rights because the DHO did not describe which "prohibited act" he was found guilty of committing. (Pet. ¶ 13.) A prisoner must be afforded at least some procedural due process protections before being deprived of good conduct time. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). A prisoner who is facing a loss of good conduct credits is not entitled to the full panoply of procedural rights that accompanies a criminal prosecution. *Id.* at 566. To satisfy the constitutional requirements of due process, prisoners facing a loss of good conduct time must be

given: 1) advance written notice of the charges; 2) an impartial hearing body; 3) an opportunity to present witness testimony and other evidence; 4) assistance for illiterate inmates or in complex cases; and 5) a written explanation of the ultimate resolution of the charges. *Espinoza v. Peterson*, 283 F.3d 949, 951-52 (8th Cir.2002).

The Court finds Petitioner received at least the minimal procedural benefits prescribed by *Wolff* during his disciplinary proceeding. The record shows that Petitioner was provided an incident report that afforded him written notice of the charges well in advance of the UDC and DHO hearings. (Buege Decl. Attach. B.) The hearing was conducted by a certified DHO, who was an impartial fact-finder as she was not the writer of the incident report, the investigating officer, a member of the UDC, or a witness to the incident. (Buege Decl. ¶ 10.) Petitioner was present during the UDC and DHO proceedings. He was advised of his rights prior to the hearings, including the right to a staff representative and the right to present witnesses and documentary evidence on his behalf. (Buege Decl. Attach. C and D.) Petitioner testified at the hearing. (Buege Decl. Attach. D.)

Petitioner claims that the DHO did not describe which Prohibited Act Petitioner was found guilty of committing. However, Section V of the DHO Report states, "The DHO finds that on June 27, 2009, at about 2:50 a.m., you committed the prohibited act of Possessing Hazardous Tool, Code 108 and Possession of anything not authorized, Code 305." The report then goes on to include a written statement of the evidence relied upon and the reasons for the sanctions imposed. Petitioner was provided a written report of the DHO decision. The record shows that Petitioner was afforded the basic procedural safeguards required by *Wolff*.

### 3. New Claim Raised in Petitioner's Reply

Petitioner asserts in his Reply that he was not given "fair warning" of the proscribed conduct before a sever sanction was imposed upon him. Because Petitioner raises this claim for the first time in his reply brief, it is not properly before this Court. *See Christian v. Dingle*, Civ. No. 06-3056, 2008 WL 2467754, at *2 (D.Minn. June 16, 2008); *Krotzer v. Morrison*, Civ. No. 06-1074, 2007 WL 1378424, at *1 (D.Minn. May 7, 2007). Accordingly, this claim is summarily rejected.

### IV. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1) Petitioner's Petition for a Writ of Habeas Corpus [#1] be **DENIED** and that this action be **DISMISSED WITH PREJUDICE**; and

2) **JUDGMENT BE ENTERED ACCORDINGLY.**

It is further recommended, pursuant to 28 U.S.C. § 2253(c), that a Certificate of Appealability not be issued because Petitioner has failed to make a substantial showing of the denial of any constitutional right.

DATED: February 24, 2011                            *s/ Franklin L. Noel*
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 10, 2011**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under the rules shall

be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.